**In re YARN PROCESSING PATENT LITIGATION.**

**MDL Docket No. 82.**

United States District Court,
S. D. Florida.

Oct. 16, 1972.

3. 344 F.2d at 26.

Edward S. Irons; Irons, Sears & Santorelli, Washington, D. C., for Celanese Corp. and Fiber Industries, Inc.

James L. Armstrong, III, Smathers & Thompson, Miami, Fla., for Lex-Tex, Ltd., Inc.

McNeill Smith, Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., for Texfi Industries, Inc.

William W. Beckett, Birch, Swindler, McKie & Beckett, Washington, D. C., for Saquoit Fibers Co.

William K. West, Cushman, Darby & Cushman, Washington, D. C., for Burlington Industries, Inc., Madison Throwing Co., Fedelson Throwing Co., Isabela Throwing Co., Atwater Throwing Co., Klopman Mills Corp. and Leon Ferenbach, Inc.

David Klingsberg, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Kayser Roth Corp., Kahn & Feldman, Inc., National Spinning Co., Inc. and Texlon Corp.

Feibelman, Friedman, Britton & Stettin, Miami, Fla., for Universal Knitting Mills.

David Rabin, Greensboro, N. C., for Universal Textured Yarns, Inc., G. Allen

Mebane, Concordia Manufacturing Co., Paul O. Boghossian, Jr., Custom Industries, Inc., and W. Conway Owings & Associates, Inc.

Charles A. Kimbrell, Miami, Fla., Local Counsel for Celanese and FII.

Harry W. Asquith, Swan, Keeney, Jenckes & Asquith, Providence, R. I., and Aubrey V. Kendall, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for Concordia.

Paul B. Bell, Parrott, Bell, Seltzer, Park & Gibson, Charlotte, N. C., for MacAndrews & Forbes Co., Inc., Alba-Waldensian, Inc., Belmont Throwing Corp., Carolina Throwing Co., Inc., Sapona Manufacturing Co.

Anthony F. Phillips, Willkie, Farr & Gallagher, New York City, for Atwater Throwing Co., Inc., The Duplan Corp., Glen Raven Mills, Gold Mills, Isabela Throwing Co., Klopman Mills Corp., Stonecutter Mills Corp., and Sondra Manufacturing Co., Inc.

John McAleese, Jr., Cunniff, Bray & McAleese, Plymouth Meeting, Pa., for Nicholas J. Stoddard, Fred D. Tecce, Harold J. Berger, and The Permatwist Co.

Laurence A. Schroeder, Walton, Lantaff, Schroeder, Carson & Wahl, Miami, Fla., for Warren A. Seem.

Fowler, White, Humkey, Burnett, Hurley & Banick, P.A., Miami, Fla., for Leumas Knitting Mills, Inc.

Robert F. Conrad, Washington, D. C., for Leesona Corp.

Gerald Kurland, Cleveland, Ohio, for Hialeah Knitting Mills.

## MEMORANDUM OPINION DENYING CELANESE'S MOTION FOR CLASS ACTION

ATKINS, District Judge.

This Court has had before it since June 15, 1972 a motion by Celanese and Fiber Industries Incorporated to maintain the consolidated Florida actions in the Multidistrict Litigation Docket No. 82 as a class action under Rule 23(b)(1) and 23(b)(2) of the F.R.Civ.P. The issues postulated for determination of this class action have been the validity of the three single heater patents (Nos. 2,803,105; 2,803,108; and 2,803,109) and the three double heater patents (Nos. 3,077,724; 3,091,912 and 3,472,011) relating to the texturing of yarn. The merits of the proposal have been measured by the requirements of Rule 23 of the F.R.Civ.P., as they must be, and the motion has been denied. The purpose of this memorandum opinion is to set down in written form the findings of the Court in regard to this motion.

However, before going into any more detail, perhaps some explanation concerning the delay in ruling on this motion would be in order. The motion was filed June 15 and under the Local Rules the replies should have been submitted within eight days. Unfortunately this was not possible as the motion was quite lengthy, comprising some thirteen pages with additional exhibits and affidavits. The responses of the New York Throwsters and Leesona were docketed on June 30, with the former comprising sixty-one pages with attached affidavits and exhibits which were equally voluminous. The original response of Leesona did not address the merits of the motion, but rather contained a motion to transfer the cases to the Southern District of Florida for trial under 28 U.S.C. § 1404(a). I felt that it was important to meet the issue presented in a direct fashion, so paragraph D of Pretrial Order No. 3 required Leesona to file a responsive memorandum by July 24, 1972. That same order allowed Celanese to file a reply memorandum—ordinarily not allowed but in this instance desirable—by the same date. Both of those requested documents were also quite lengthy, and they raised further allegations, including, but not limited to, bad faith pleading and misstatements of fact. The Court

at that time took all of the memoranda under advisement and, pursuant to Rule 23(c)(1), has determined "as soon as practicable . . . whether [the class action] is to be so maintained." The decision has been made only after careful consideration of all the factors brought to the attention of the Court, including the opinions filed by the Judicial Panel on Multidistrict Litigation in this case.[1] Advancement of the interests of all the parties will most likely be effectuated by the denial of this motion.

■ This Court has neither the time nor the inclination to discuss in this opinion all of the myriad points raised by counsel in both the original motion and all of the responses subsequently filed.[2] All that need be said about those points that are omitted is that they have been considered and given appropriate weight in determining the outcome of this motion. While this Court has been cited to several cases indicating that factual disputes in class action allegations should be resolved by an evidentiary hearing, Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1124–1125 (5th Cir. 1969); Eisen v. Carlisle and Jacquelin, 391 F.2d 555 (2nd Cir. 1968), a hearing is not necessary. In this particular litigation, the trial court has had the benefit of four extensive pretrial conferences as well as numerous detailed affidavits exploring all facets of this motion and the entire litigation. Any evidentiary hearing would only present difficulties far outweighing any advantages.[3] While an inquiry into the merits of the complaints involved would not be permitted, Miller v. Mackey Int., Inc., 452 F.2d 424 (5th Cir. 1971), the proof would be directed in large part toward those aspects of the case with which the Court is already very familiar. The only concrete result would be further delay, which obviously should be avoided where possible. Rule 23(c)(1). One more preliminary matter that must be dealt with is the contention made by the New York Throwsters that none of the lawsuits sought to be maintained as a class action were "brought as a class action" in accordance with Rule 23(c)(1). Obviously, if that were the case, no further discussion would be necessary. However, in order to reach the merits of the motion, and to avoid further prolonging the determination of this question, I am construing the original motion which further requested that "the pleadings in said actions . . . be amended appropriately" to include the prayer for determination as a class action.[4] While Celanese may only have

---

1. In re Yarn Processing Patent Validity Litigation, 341 F.Supp. 376 (J.P.M.L. 1972).

2. A casual reading of the responsive memorandum submitted by Celanese, pursuant to ¶ D of Pretrial Order No. 3, will disclose to the reader that it dealt at length with the inconsistencies in the two positions taken by the New York Throwsters in the hearings before the Panel and in opposing this motion for a class action, the merits of the motion for transfer for trial under § 1404(a), and the alleged factual inaccuracies present in the Throwsters reply memorandum, in addition to replying to the relevant portions of the memorandum. Reference should also be made to the lengthy reply memorandum of the Throwsters that encouraged the rejoinder mentioned above.

3. All counsel, of course, would have to be present, necessitating the determination of a date that would be convenient for all involved. Witnesses would have to be brought down to Miami to testify to the propriety of including the various segments of the yarn industry in the class as proposed, inevitably resulting in duplication of the evidence already ably submitted to the Court by way of affidavit and memorandum. For some of the witnesses it might conceivably necessitate interruption of deposition schedules previously arranged at no little inconvenience to the Court and the parties involved. *See* Pretrial Order No. 2.

4. Reply Memorandum In Support of Motion by Celanese and FII Under Rule 23, p. 28.

standing to request such an amendment in the cases in which it is a party, the joinder in the motion by Leesona and Lex-Tex obviates that problem with respect to the other consolidated Florida cases.

## I

■ In order for a Court to allow a cause to proceed as a class action, all four of the provisions of subsection (a) of Rule 23 must be met, and in addition at least one of the three subdivisions of subsection (b) must be complied with. Miller v. Mackey Int., Inc., 452 F.2d 424 (5th Cir. 1971); Rule 23, F.R.Civ.P. Celanese has gone to great lengths to provide the Court with a list of potential defendants that could comprise a class of "alleged infringers," but speculation is not the stuff of which class actions are made. The twelve cases sought to be maintained as a class action actually consist of one declaratory action brought by Celanese against Leesona and eleven infringement suits brought by Lex-Tex against those infringers against whom service of process was available in accordance with the standards set forth in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. The categori-

cal listing of various companies involved in yarn processing does not convince this Court that the parties are "too numerous." Rather, it convinces this Court that these speculative "defendants" are not exposed to infringement liability since they have purposely not been sued by the patent holder. In any event, joinder might not be practicable, but the Court fails to see how this can possibly prejudice those alleged members of the class.[5]

The first prerequisite has not been met. Further discussion of the remaining prerequisites is not necessary, but a brief recital will show that this is not the only ground upon which denial of the motion can logically be based.

■ The next requirement is that "(2) there are questions of law or fact common to the class. . . ." As to those six patents sought to be declared valid or invalid as the case may be, the Court would have to agree with the Judicial Panel on Multidistrict Litigation in its assessment that these issues involve "common questions of fact." In re Yarn Processing Patent Validity Litigation, 341 F.Supp. 376, 377 (J.P.M.L. 1972). Whether the patents have been infringed, if found valid, would require diverse factual presentations, so the

5. In asserting that Rule 23(a)(1) has been met, Celanese relies on Dale Electronics, Inc. v. R.C.L. Electronics, Inc., 53 F.R.D. 531, 534 (D.N.H.1971), for the proposition that "[j]oinder is not only impracticable, but impossible." However, that case can be distinguished in that the plaintiff patent holder in that case fully expected, in the event the class action was denied, to have to repeat the process twelve times as to all patents (five in that case) held valid. *Id.* at 535. Here it affirmatively appears that Lex-Tex does not intend to sue outside the state of Florida. In other words, Lex-Tex will not expose itself to suit in any other state, but it understandably is anxious to have "alleged infringers" bound by the *res judicata* effect of a class action. Obviously it has nothing to lose under the now mandatory collateral estoppel effect of a finding of invalidity under

Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

There also remains the question of the propriety of a class action for determination of patent validity, when one considers that Congress has provided for a special venue statute for patent infringement litigation. 28 U.S.C. § 1400(b). Two courts have decided that the venue statute does not prohibit the class action in similar instances (note, however, the dissimilarities discussed above) but the question is far from settled. Dale Electronics, Inc. v. R.C.L. Electronics, Inc., *supra*; Research Corp. v. Pfister Associated Growers, Inc., 301 F.Supp. 497 (N.D.Ill.1969). *See also* BNA Patent, Trademark & Copyright Journal No. 96, B-1 (Sept. 28, 1972).

class could only be proper on the threshold inquiry of validity.

The facts as brought out by the affidavits and pretrial meetings with counsel fail to convince me, however, that "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." At the outset I conclude that there is some friction between the positions advanced by Celanese and the New York Throwsters.[6] This is not dispositive of the issue, but encourages me to look closely at the variances between parties. Noting first of all that the representative is a business competitor of the class it seeks to represent, I further find that the difference in emphasis on the six different patents makes Celanese an inappropriate representative. Celanese is more concerned with the double heater patents than it is with the false twist single heater patents, and it professes no interest in the three Hilbert spindle patents at issue in the other cases.[7] Since the claims and defenses of the New York Throwsters are inextricably tied up with the proof related to the single heater patents, there is no "typicality" in this case.

The final absolute prerequisite is the conclusion that "(4) the representative parties will fairly and adequately protect the interests of the class." Normally, this is something the Court must look into carefully on its own to detect possibilities of collusion, etc., on the part of the purported representative. However, this motion has brought the most serious opposition not from the patentees, but rather from the other potential class members. These vociferous objections by the New York Throwsters cause the Court to raise an eyebrow and look a little closer at the situation. While Celanese is quite correct that innuendos and insinuations have been circulating concerning possibilities of collusion should the class action be allowed, the Court has paid no attention to these unsubstantiated "hearsay" allegations. However, the Court is still forced to conclude that the differences in the strategy, defenses, and monetary stake in the outcome render Celanese an inappropriate representative.[8] Celanese counters this contention by stating that its motion would allow liaison counsel to continue managing the litigation for each party represented. This is not satisfactory to the Court, however. Since the class action offers few if any advantages in this case, its allowance under these circumstances would not alleviate the complications in this case if various different attorneys were allowed to form their own strategy. It would not only fail to relieve this Court's headache to any measurable degree, but in the vernacular of Madison Avenue would most assuredly result in an "upset stomach." Partial solutions to some of the problems in this

---

6. That Celanese, in the first instance, should be advocating the disposition of these issues by a class action is unusual. After *Blonder-Tongue*, it is clear that determination of invalidity would collaterally estop the patentee from further suits to enforce the patent, thereby insulating any other alleged infringers. Perhaps it is because Celanese, by submitting to the Court's jurisdiction by bringing a declaratory judgment action, wishes to have a possible determination of patent validity binding on all potential competitors, rather than on it alone. Whatever the reason, the decision here is not affected in any way—the class action question must be decided in accordance with Rule 23 and not the merits of the cause of action. Miller v. Mackey Int., Inc., 452 F.2d 424 (5th Cir. 1971).

7. These patents are under attack in the Master Case (Leesona Corp. v. Duplan Corp., No. 72–691–Civ.–CA), and involve a different method of obtaining the false twist results that also are possible using the three single heater patents.

8. Note, however, the denial by Celanese that these differences exist in the Reply Memorandum in Support of Motion by Celanese and FII under Rule 23, pp. 16–18.

instance cannot justify confusing and delaying what can finally be called an organized discovery process.

## II

It has been shown, therefore, that a class action is neither proper nor permitted in this case. The failure of the moving party to carry his burden in proving to the Court that the prerequisites have all been met makes the decision unavoidable. Technitrol, Inc. v. Control Data Corp., 164 U.S.P.Q. 552 (D.Md.1970); William Goldman Theatres, Inc. v. Paramount Film Dist. Corp., 49 F.R.D. 35 (E.D.Pa.1969).

Rule 23 provides, however, that even if all of the requirements under subsection (a) are met, at least one of the categories listed under subsection (b) must be met. Some mention of those categories should be made. Subsection (b)(1)(A) provides that a class would be proper if "the prosecution of separate actions by or against individual members of the class would create a risk of . . . inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class . . .." While this provision has arguably been met here, it is not at all clear that one or two, or even several findings of patent validity, with a subsequent finding of invalidity, make the required standard of conduct of the patentee "incompatible."[9] The finding of invalidity would create the collateral estoppel effect mandated by Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Foundation, 402 U.S. 313, 91 S.Ct.

1434, 28 L.Ed.2d 788 (1971). As to 23(b)(1)(B), it is clear that the adjudications would not "be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . .." The one-way street of Blonder-Tongue, supra, means that if the patentee loses, the other putative class members win by collateral estoppel default. If the patentee prevails in one suit, that does not control any subsequent adjudication. A new defendant is allowed to retry the validity of the patent anew. The only impediment created is one for the patentee, not the other class members.[10]

The second subdivision of Rule 23(b) states that a class may be appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class . . .." This is not the case in this litigation. It is undisputed that to the present time, one of the patent holders has only attempted to sue those members of the purported class who could be made parties in Florida. This refusal to venture out of the state makes the grounds relied on "inapplicable" to the class. Those manufacturers, textures and knitters who cannot be sued by Lex-Tex in Florida quite obviously do not wish to be exposed to a final determination of the patents' validity. When handled on a sporadic basis, the "members" of the class cannot be hurt, but may well be helped, depending on the outcome of the lawsuit.

Finally, 23(b)(3) should be dealt with.[11] This is the easiest provision to comply with, and ordinarily any lawsuit

---

9. *But see* Dale Electronics, Inc. v. R.C.L. Electronics, Inc., *supra* 53 F.R.D. at 537; *see also* note 5 *supra*.

10. However, in this case the impediment is insubstantial since Lex-Tex does not intend to litigate the patent elsewhere. When both Celanese and Lex-Tex have been recognized as suffering no ill-effects from the denial of this motion, then there seems to be no compelling interest to justify the formation of a class. *Cf.* Gosa v. Securities Investment Co., 449 F.2d 1330 (5th Cir. 1971); Lamarche v. Sunbeam Television Corp., 446 F.2d 880 (5th Cir. 1971).

11. Celanese has not relied on this subsection of Rule 23, however. No reason is given in the memorandum submitted with the motion.

that involves common questions of law or fact can come within its broad boundaries. However, in this case the Court is not convinced "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." A class action is not superior to other methods available to the Court.[12] In addition the requirements of notice to the potential class members negatives any possible superiority that might otherwise exist. Rule 23(c)(2), F.R.Civ.P. In the discretion afforded me in these instances, I find that even the third subdivision of Rule 23(b) has not been complied with. City of New York v. International Pipe & Ceramics Corp., 410 F.2d 295, 300 (2nd Cir. 1969).

---

12. There is now pending for determination before this Court Leesona's motion to transfer the cases here for trial. No discussion of the merits of this motion will be made here, other than the fact that it will be given careful study.