Irmgard S. GERSTLE, Plaintiff,

v.

CONTINENTAL AIRLINES, INC., a corporation, Defendant.

Civ. A. No. C-1687.

United States District Court, D. Colorado.

July 16, 1970.

Van Cise, Freeman, Tooley & Mc-Clearn, by Hugh J. McClearn, Denver, Colo., for plaintiff.

Holland & Hart, by Gordon G. Greiner, Bruce W. Sattler and Robert L. Morris, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This action was originally filed by plaintiff individually under the provisions of Title VII of the 1964 Civil Rights Act, with jurisdiction based on 42 U.S.C.A. § 2000e–5(f). Plaintiff's claim in essence is that defendant has discriminated against her in employment on the basis of her sex, in violation of Title VII. Subsequent to filing plaintiff amended her complaint so as to present the case as a class action on behalf of not only herself, but all other persons similarly situated. Before us is her motion seeking an order pursuant to Rule 23(c) (1), F.R.Civ.P. that this cause may be maintained as a class action. The question has been briefed and argued, and the issue of the propriety of a class action stands submitted.

The facts relevant to this issue (as revealed by the pleadings) are: Plaintiff was employed by defendant as a flight cabin attendant or stewardess in 1959. She remained in that position until August 31, 1965. During this period it was defendant's policy to terminate or force resignation of any female flight cabin attendant who married. In accordance with this, plaintiff resigned as a stewardess effective August 31, 1965 because of her forthcoming marriage. Defendant granted plaintiff a leave of absence, which leave was later extended, so that she could retain her seniority rights and remain with defendant in some other capacity.

In late 1965 defendant informally abandoned its policy of requiring the resignation of female flight cabin attendants who marry, and this policy was formally abandoned when defendant and

the Air Line Pilots' Association executed an agreement to that effect on April 11, 1966. On May 3, 1966, while still on leave of absence, plaintiff requested reinstatement to her former position as a flight cabin attendant and her request was denied by defendant.

Plaintiff then filed a charge with the Equal Employment Opportunity Commission (the Commission) which, on April 30, 1969, issued a finding that there existed reasonable cause to believe that defendant had violated the 1964 Civil Rights Act. The Commission was unable to achieve voluntary compliance by defendant and accordingly advised plaintiff that she had thirty days in which to file a complaint in the United States District Court. Plaintiff has instituted this suit as a class action, and she prays for (1) an order enjoining defendant from continuing its practice of requiring female flight cabin attendants to resign or be terminated due to marriage; (2) reinstatement for herself and all other persons similarly situated; (3) and for a money judgment for back pay for herself and all other persons similarly situated.

Plaintiff asserts that the class which she represents consists of:

(1) All female flight cabin attendants presently employed by defendant;

(2) all female flight cabin attendants who may be employed by defendant in the future;

(3) all female flight cabin attendants whose employment with defendant was terminated because of marriage between July 2, 1965 (the effective date of the 1964 Civil Rights Act) and the present;

(4) and all female flight cabin attendants whose employment with de-

fendant was terminated because of marriage before July 2, 1965, but who were available for reinstatement as flight cabin attendants after July 2, 1965.

**I**

In general, class actions are favorably viewed by the courts as a means of seeking redress for civil rights violations—the class action is the method which Congress has established for the vindication of the public interest through private actions.[1] In addition, the trend under Rule 23 has been one of liberal construction, so that in doubtful cases the maintenance of the class action is favored.[2] The theory behind liberal construction of the rule is that determination of the propriety of a class action is to be made at an early stage of the proceedings; thereafter the court maintains the power to supervise the course of the action, and to modify the order as necessary when the facts become developed.[3] If subsequent developments call for it, the court at its discretion can even strike the entire class allegation.[4] Despite this liberal tendency in construction of the rule, the requirements of Rule 23 must be met or a class action cannot be maintained.

**II**

The first requirement of Rule 23(a) is the numerosity requirement. On this subject Rule 23(a) reads, in part,

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, * * *.

If we were to hold that all female flight cabin attendants are to be included within the class, this require-

1. Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968).

2. Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968); Contract Buy-

ers League v. F & F Investment, 48 F. R.D. 7 (N.D.Ill.1969); Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968).

3. See Rule 23(d), F.R.Civ.P.

4. Siegel v. Chicken Delight, Inc., 271 F. Supp. 722 (N.D.Cal.1967).

ment would pose no problem. The problem is, however, that this group as well as the second group—future female flight cabin attendants—have not presented to the court an actual case or controversy and, of course, the absence of such deprives us of jurisdiction to hear the claims of this large group of stewardesses. The reason for the lack of a case is that they have no claim to reinstatement or back pay since none of them have been terminated yet, for any reason.

When we consider the remedy of injunction, the essential element of a justiciable case or controversy is equally lacking. The no-marriage rule as to female flight cabin attendants has been out of existence for over four years. Defendant has agreed with the Air Line Pilots' Association, the collective bargaining agent for the flight cabin attendants, that girls may continue their employment as stewardesses after marriage. There is no allegation in the amended complaint that defendant threatens to reinstate its no-marriage rule. Even though we assume then that the no-marriage rule violates Title VII of the Civil Rights Act, the rule does not currently exist and plaintiff has not alleged that there is a possibility of revival in the future. It is clear then that no dispute exists between defendant and its present and future stewardesses on this matter, and no justiciable case or controversy exists cognizable in this Court.

### III

With the elimination of present and future stewardesses from the purported class, there remain for consideration the last two groups—(1) female flight cabin attendants whose employment with defendant was terminated because of marriage between the effective date of Title VII (July 2, 1965) and the present, and (2) female flight cabin attendants who were terminated because of mar-

riage before July 2, 1965 but who were available for reinstatement as stewardesses after that date. It is necessary to limit this latter group to girls who were available for reinstatement and who made their availability known to defendant after July 2, 1965. This limitation is necessary because determination of availability for reinstatement requires a determination of the individual's state of mind at a given time. This makes for a most difficult determination. Whether a stewardess was "available for reinstatement" is wholly subjective [5]; to allow girls in this category to state *now* that they were available for reinstatement (ready and willing to return to their flight cabin attendant positions) gives to them an unfair advantage, for an ex-stewardess who, after July 2, 1965, had no desire to return to the air could now state that she *did* indeed want to fly, even though she gave no indication of this. She thereby becomes eligible for the recovery of back pay. The unfairness to defendant is apparent. Because of this it must be concluded that, at the present at least, the class which plaintiff may represent consists of female flight cabin attendants terminated due to marriage after July 2, 1965, and those terminated before July 2, 1965 but who were available for reinstatement after that date *and* made this availability known to defendant.

### IV

Defendant asserts that in a Title VII class action the class can only receive injunctive relief, and that affirmative relief, such as reinstatement and back pay, is not to be awarded to members of the class who did not file a claim with the Equal Employment Opportunity Commission (in this case, plaintiff was the only member of the class to so file). Thus, defendant argues that the class as the Court has constituted it cannot be awarded the relief they claim (since we have already concluded that there is no

5. *See* Chaffee v. Johnson, 229 F.Supp. 445 (S.D.Miss.1964).

jurisdiction for the awarding of injunctive relief).

■ Although some cases have held, as defendant argues, that members of a class must have filed individually with the Commission to be entitled to affirmative relief [6], it appears to us that the cases allowing recovery of back pay and reinstatement are better reasoned. Denial of affirmative relief is grounded on the supposed frustration of the conciliatory efforts of the Commission. It is the function of the Commission to work out, through private negotiation, voluntary compliance by a discriminating employer within Title VII. The courts have felt that where injunctive relief is sought, and conciliation has failed as to the class member who filed with the EEOC, there is no reason to believe any other class member would succeed in the administrative process, and exhaustion of administrative remedies by all members of the class would be futile and unnecessary. However, these courts have reasoned that where affirmative relief is sought, the facts of each complainant's case as to reinstatement or back pay may vary sufficiently so that failure of voluntary compliance with one complainant would not necessarily mean that voluntary compliance would fail as to all complainants.[7] But if the members of the class are similarly situated, it would seem futile to require each member to go through the administrative machinery, so to speak. The results would be foregone and a series of challenges would appear to be unnecessary. Where, as here, the defendant failed to respond to conciliation when dealing with a plantwide discriminatory policy, there is little reason to believe that defendant will now voluntarily comply with the Civil Rights Act by granting reinstatements and back pay which may be ow-

ing directly because of the discrimination heretofore unsuccessfully challenged in the prior Commission hearings. Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 720 (7th Cir. 1969); Local 186, International Pulp, Sulphite and Paper Mill Workers v. Minnesota Mining and Manufacturing Co., 304 F.Supp. 1284, 1289–90 (N.D.Ind.1969); Madlock v. Sardis Luggage Co., 302 F.Supp. 866 (N.D. Miss.1969). The public interest which is to be served by private actions under the Civil Rights Act [8] will be as well served by the award of affirmative relief to a class as by the granting of injunctive relief. We therefore hold that members of any class which plaintiff represents in this action are entitled to affirmative relief, such as reinstatement and back pay, even if the individuals never filed complaints with the EEOC.

## V

■ Having determined that plaintiff represents a class of stewardesses terminated due to marriage after July 2, 1965 or terminated before that date but who were available for reinstatement after July 2, 1965, it is still not certain that there are sufficient members of this class to meet the numerosity requirement of Rule 23. Counsel for plaintiff acknowledged at oral argument that he did not yet know how many of the female flight cabin attendants who were terminated during the relevant period were terminated because of marriage. Nor has the Court been informed as to the number of stewardesses in the class who were terminated due to marriage before July 2, 1965 who were available for reinstatement thereafter (i. e. made their availability known to defendant). It is possible that when the members of the class are finally identified their number may be small enough to permit joinder. In this event, the Court can

---

6. Austin v. Reynolds Metals Co., 62 LC 6595 (E.D.Va.1970); Allen v. Lockheed-Georgia Co., 61 LC 6876 (N.D.Ga.1968); Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn.1966).

7. See cases cited, note 6 *supra*.

8. Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

strike the class allegation. Until the number of class members is determined, however, the Court will treat this action as a class action, with the class being that defined earlier in this opinion.

■ Other than the requirement of numerosity discussed above, the Court is of the opinion that all the other requirements of Rule 23 have been met in this case. Thus, there are questions of law or fact common to the class and plaintiff's claim is typical (Rule 23(a) (2), (3), F.R.Civ.P.). We think that the allegation of a Title VII violation as to all members of the class is sufficient to meet the mentioned requirements. True, there will be varying factual questions concerning individual members of the class, but these variations should not be fatal. It is not necessary that the common question dispose of the entire litigation—the fact that questions peculiar to each individual remain after common questions have been resolved does not mean that a class action is not permissible.[9] Individual matters such as the determination of damages can be handled by the Court at a hearing or through a special master appointed pursuant to Rule 53. Although varying fact patterns may underlie individual claims, it is alleged that the same unlawful conduct was directed at plaintiff and those she represents. This is sufficient to meet the common question and typicality requirements of the rule.[10]

■ Furthermore, plaintiff will adequately and fairly protect the interests of her class. Rule 23(a) (4). It is difficult to see, as defendant claims, how the fact that plaintiff faces defenses peculiar to herself would detract from her ability to adequately represent the class. Plaintiff still must establish her case

and that of the class, and the Court retains supervisory powers over the conduct of the litigation so that plaintiff's perseverance can be insured. To say that plaintiff is not an adequate representative simply because her claim is not identical with that of all other class members is to require, in any class action, that the claims of each member of the class be absolutely identical. The rule does not require this much.

■ For a class action to be maintainable at least one of the requirements of Rule 23(b) must be met. Plaintiff qualifies under Rule 23(b) (3) in that the claim under Title VII is not only a common question in this case, it is the *predominant* question in the litigation. The claims of all members of the class can succeed only if a Title VII violation is found, and if no such violation is found all claims will fail. Certainly, then, this part of the requirement is met.

■ However, Rule 23(b) (3), which requires that the common question in the litigation predominate over all other questions, also states that a class action in a "predominant question" case must be "superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiff has met this requirement. Class actions are particularly useful where it is unlikely that individual claimants will file an action, and that is the case here. The rights of the members of the class under Title VII, if any, would not be vindicated if the class action procedure is not used.[11] There do not appear to be significant difficulties in the maintenance of this cause as a class action, although the Court may have to closely monitor the course of the litigation. However, the fact that the Court will

9. Esplin v. Hirschi, *supra* note 2; Dolgow v. Anderson, *supra* note 2.

10. *See* Eisen v. Carlisle & Jacquelin, *supra* note 2; Siegel v. Chicken Delight, Inc., *supra* note 4; Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968); *see also* 3B Moore's Federal Practice § 23.06–2.

11. We here assume that the numerosity requirement will be met, making joinder impractical. Of course, if that requirement is not eventually met, a class action would not be permissible, and in that event relief could be adequately afforded through joinder procedures.

have to supervise the action does not mean a class action is not appropriate.[12] It is therefore

Ordered, adjudged and decreed that:

(1) This action is maintainable as a class action;

(2) the class represented by plaintiff shall consist of those female flight cabin attendants whose position with defendant was terminated due to marriage after July 2, 1965 and those female flight cabin attendants whose position with defendant was terminated before July 2, 1965 but who were available for reinstatement after that date and made such availability known to defendant.

We will, of course, maintain touch with the progress of the litigation, and particularly the discovery of which persons are included in the class as defined above so as to determine whether the facts as developed justify the continuation of this action as a class action.

---

12. Esplin v. Hirschi, *supra* note 2; Contract Buyers League v. F & F Investment, *supra* note 2.